May it please the court, my name is Amanda Fisher, counsel for the appellants. This case involves the death of 65 people. These people were killed when the mine that they were working in, which is owned and operated by the defendants and which the defendants knew was unsafe, exploded. The district court found that it did not have subject matter jurisdiction over this case. However, the district court did have subject matter jurisdiction on two grounds. First, the Alien Tort Claims Act, and second, the Class Action Fairness Act. In regards to the Alien Tort Claims Act, in order to have a case under the Act, you need to prove that there's been a violation of international law. This was the problem that the district court had, finding that there was no violation of international law. However, there was a violation of international law in this case, again, on two grounds. First, on the ground of customary international law, and specifically, occupational health and safety standards, which are a part of customary international law. And secondly, on the ground of extrajudicial killing. Let's go into your first ground, occupational safety. What you're saying is that there's a customary law of nations ground, to use a statute's definition of customary international law, but law of nations, that worldwide workers have a right to a safe place to work. Is that right? Yes. We don't have that in the United States. Well, in the United States... We have, for instance, under the Federal Employer's Liability Act, right? It's been on the books since 1906. We have two grounds regarding a safe place to work. We have the Boiler Inspection Act, which makes it absolute liability, safe place to work. And we have Section 51, which makes it a reasonably safe place to work. And those are federal statutes. Now, safe place to work means different things in the United States. What do you cite as the customary law of the world that there is an absolute right to a safe place to work? Well, first I would say that, to clarify, there are workplace accidents in this country and every country in the world. That's the nature of work. So I would not say that the customary law is that the nations of the world agree that there should be no workplace accidents ever. But I do believe that the nations of the world would say that employers... Not the way the nations of the world would say. In an ideal world, in a utopian world, that might be true. But we're dealing here with what is a customary international law. Please cite to me what is the basis of your saying that there is a right to a safe place to work for workers worldwide? So the first thing that I'll point to is the Universal Declaration of Human Rights, which states that everyone has a right to just and favorable conditions of work. The Universal Declaration of Rights is not a treaty, but courts have held that it is a document that evidences principles of international law. Is that a Ninth Circuit court that you're citing? The Ninth Circuit... Didn't we have that issue before us in Sarai versus Rio Tinto? Well, in Flores, the difference with Flores would be that there the plaintiffs were relying on the right to health and the right to life, which is found in the Universal Declaration of Rights. And the problem in Flores was that the court found that those were not specific enough. And I think that those are certainly the right to life and the right to health And I think that those are certainly the right to life and the right to life.   The problem is that an individual, a company, or a government would not know how to ensure through its laws that somebody has the utmost mental or physical health. It's an absolute... Please state for me what you contend to be the specific law of nations. Is it a reasonably safe place to work? Is it an absolutely safe place to work? Is it a recklessly unsafe place to work? What's the standard? It's a reasonably safe place to work. You cite the Universal Declaration of Human Rights for that purpose, right? Is there any language which says that? That would be the first thing that I would cite. And does that – can you cite me some language which says that every human being is entitled to a reasonably safe place in which to work? Well, in the Universal Declaration of Rights it says that everyone has a right to just and favorable conditions of work. In the international... Is that specific? Just and favorable? Well, in... What's favorable in Canada, maybe unfavorable in the United States, and vice versa? I think that in – and I think that if you actually look at different areas of international law, there is much more specificity. So, for example, if you look at the International Labor Organization's Safety and Health and Minds Convention of 1995, which actually the United States is a party to, and that convention states that... Is Mexico? Mexico is not a party to that convention. Is that where this accident occurred? I'm sorry? Is that where this event occurred? That is where this event occurred. Mexico is a party, as well as the United States, to a few other international laws which I will also cite. But the Safety and Health and Minds Convention states that entities shall take all measures necessary to eliminate or minimize the risk to safety and health and minds, including ensuring adequate ventilation and taking measures and precautions to prevent fires and explosions, as well as, when unsafe conditions arise, evacuating the workers. And I... How many countries are signatories to that convention? Twenty-four countries. And you say that that meets the standard of universality that SOSA says we have to... Well, again, I think the standard of universality comes from the body of law that I will cite and that is cited in my brief. So I don't think that... I do not believe that any one of these conventions or declarations rises in and of itself to the level of international law. But I think looking at the body as a whole, which is what courts, the Supreme Court, the Second Circuit and Pfizer, which is exactly what they tell us to do. For example, in Pfizer, where the court found that there could be an Alien Tort Act claim for informed consent for medical testing, the documents or the international laws that the court looked at in that case were, was first the Nuremberg Code. Secondly, the case looked at the World Medical Association's Declaration of Helsinki. Third, the Council for International Organizations of Medical Services guidelines, which were just guidelines. And then the International Covenant on Civil and Political Rights. So those, the court found in Pfizer that those four declarations or guidelines or covenants formed enough of a body of universal law or of international law or the law of nations to show the universal aspect or universality aspect of informed consent for medical testing. And the court also found there that it was specific enough. And I believe here we have the right to reasonably safe work is specific enough for the following reasons. First, as I said, there are instruments in international law, such as the Safety and Health in Mines Convention, which specifically say what a workplace and specifically a coal mine needs to do to ensure a reasonably safe workplace. In addition, I think the fact that the Grupo Mexico, one of the defendants in this case itself, has a policy listed on its website that says that it will maintain a safe and healthy working environment. So the defendants in this case and corporations or individuals or governments know how to provide a reasonably safe workplace. This is not like the issue in Flores where ---- But you don't even have universal standards for occupational safety across the globe. I mean, people look at it, I assume, totally differently in various places of the world. So how do they really know how to comply? Well, I think that with the right to reasonably safe work, there is the necessity of differences in how it's applied. Just because workplaces are different. I mean, the way that you make a steel mill safe is not the same way that you make a coal mine safe. But the idea, the right to have a place that you can go to work without the significant risk of dying, which was what was happening in this case, I mean ---- Any limiting principle which you accept so that the Federal courts of this country will not be open to every workplace injury, be it in Paris or in Buenos Aires or in Japan? Well, in this case, again, we are not contending that every workplace accident should come to the United States Federal courts under an Alien Tort Act claim. Why not? Because every workplace accident, some workplace accidents are accidents. Some workplace accidents occur when ---- That would be that there was a reasonably safe place to work in the defendant's If you were to do a verdict, wouldn't you? Well, but then I ---- Think again, please. Is there any limiting principle to your proposal that the Federal courts be open to every alien who is hurt in any workplace accident where the accident may be caused in whole or in part by unsafe working conditions? Well, I think the limiting principle would be that in order to prove subject matter jurisdiction in the beginning, the plaintiffs would have to prove that the ---- that there was a violation. And the violation would be that the defendants failed to provide a reasonably safe place to work. By what standard?  Well, I think the limiting principle would be that the defendant should not be able to have the knowledge that the mine or that the workplace is going to explode or that an accident is going to occur, and then allow the workers to continue going to that workplace. A sort of common law reasonable standard, right? Well, yes. All right. Now let me ask you another question. You said something that reminded me of a point. You said a corporation or a government. Now, the law of nations, and we have some cases say the law of nations means a regulation of nations. Doesn't there ---- isn't it required that you show not only corporation action but state action? Well, the state action issue, this Court said in Marcos several years ago that state action was a requirement. However, courts have been moving away from that doctrine. This Court said state action is a requirement, right? In the Marcos case. In the Marcos case, clearly. Now, we're a three-judge panel, not 11. Can we change that law? Yes. How? I believe so. Because I believe that, first, the law of Sosa said and also the Second Circuit in Philartica said that the law of the Alien Tort Claims Act, as well as the law of nations, is constantly evolving and changing, and that courts have to look at it as it is now and not as it is at the time in prior times. And so ---- But how do you square that with our rule in the Ninth Circuit that a three-judge panel cannot overrule another three-judge panel? And bank panel can, but not a three-judge panel. Well, but if there's a change in the law, which I believe that there is a change in the law ---- But no change in law in the Ninth Circuit, has there? Has there been a change in law in the Supreme Court that obligates us to so find that state action is not any requirement? No, not in the Supreme Court. But also ---- Can I just ask one particular issue totally separate from what you've been talking about? Yes. And that's the Class Action Fairness Act. You're basically asking for jurisdiction on diversity, on minimal diversity under the Class Action Fairness Act. And there's a number of requirements for pleading. You didn't put the requirements of pleading for that particular ground for diversity in your pleading. And is that fatal to your argument? First. And if not, did you actually ask the district court for the ability to amend your pleadings if the district court found that that jurisdiction was not established under CAFA? To answer the first question, it's not fatal to the case because on the face of the complaint, it is clear that those requirements are met. And we did ---- You didn't say anything about $5 million. You didn't say anything about over 100 people. You're asking the court to speculate as to what the amount of damages are. That clearly was not put in the complaint, and you have an obligation to do that. My real question is, did you actually ask for the ability to amend the complaint at the district court level so that you could actually put in the elements of CAFA into the complaint and therefore not be subject to dismissal for, you know, lack of an adequate pleading? We did not do that. But I would say that in ---- for the point about the $5 million amount in controversy requirement, we did plead in the complaint that each of the plaintiff's claims is at least $75,000, which so that would get into the 100 plaintiffs issue. But if we have 100 plaintiffs, which we believe that that is also clear on the face of the complaint, that would be more than $5 million. If each of their claims are at least $75,000, that would be ---- Well, you put in the complaint all the spouses, all the children, and all the persons who would ---- Heirs. Heirs, right. But you never identified how many there were and how much ---- well, anyway. What you're saying is that the Court should have extrapolated from your complaint, adding up the number of people speculating, but adding up the number of people and then adding it by 75 or multiplying by 75,000, right? Yes. And also I would just say to close that the Supreme Court has said that even if this is a case of completing deficiency, that if jurisdiction, if facts giving rise to jurisdiction are present or may be present, dismissals should be used sparingly in that circumstance. Thank you very much. Thank you. May it please this Honorable Court. My name is George Brandon. I'm a member of Squire Sanders from Phoenix, Arizona. I represent Grupo Mexico and its subsidiaries here. And as the Court has noted and Ms. Fischer noted, there are two principal issues on this appeal. Whether plaintiffs have stated any cognizable ATS, Alien Tort Statute, claim, giving the District of Arizona subject matter jurisdiction, they have not. And whether plaintiffs should have the benefit of CAFA, minimal diversity jurisdiction, as Judge Sessions was just discussing, to get into the District of Arizona, they should not as well. Now, the facts are central to any ATS case, and they're largely undisputed here, especially as we come up on a motion to dismiss. We take them as they find them in the complaint. Early in the morning of February 19th, 2006, at the Pasta de Contros mine in Coahuila, Mexico, business was proceeding as normal. Coal was being mined, except, as we all know, there was a terrible accident, a methane gas explosion that took 65 lives and sealed off the mine. Similar explosions have happened in mines around the world, including in West Virginia in 2010, for example, where 25 miners were killed. There was, however, no premeditated, that is, deliberate killing, extrajudicially or otherwise, of these miners. And so I take it there was an awareness of serious workplace safety problems at the mine, right? An awareness in the appellees, Your Honor? Yes. Well, they had received notice of violations that it's pled that hadn't been addressed or were in the process of being addressed from the Mexican government. I cannot say whether that is out of the ordinary because it doesn't appear from the complaint other than through sort of purple prose, Your Honor. I don't want to comment on behalf of the client, obviously. I thought, according to the record, the Mexican government went through the mine, found a number of safety problems, but then actually didn't even complete the inspection, just left after one day, so that there wasn't the full inspection. But at least in the limited reviews that they made of the mine, they found significant problems there. Well, I'm sure that is what is alleged, Your Honor, and we take that as true. But it's very difficult to see how one could categorize that as a violation of the ATS, that is, that, as the plaintiffs, as the appellants say, this conduct was tantamount to extrajudicial killing, that is, killing under official authority a violation of the law of nations by the nation of Mexico. Indeed, appellants plead that Mexico inspected and found violations, not inspected and covered up violations or inspected. Their State action argument is not that they inspected and found violations. It's they didn't go farther, that they didn't complete the inspection. They just decided to leave, and that they did no follow-up. And that, their claim, is sufficient to establish State action. Is that not right? Isn't that the claim that they made? I think that may be the claim they make this morning. But I don't think they allege State action, Your Honor. I think what they allege is simply negligence, perhaps by Mexico, certainly by my clients and their subsidiary who actually ran the mine. But that is insufficient for State action under this Court's decision. For example, in the Rio Tinto case, you know, the operative word is that the government becomes the agent of the corporation in these matters. And there's no pleading of that here, and there are no facts that suggest that, and certainly the district court didn't find any facts of that nature. A mere toleration of unsafe working conditions does not rise to being an agent of the government for purposes of deliberate killing. And so really I have three points on that claim. One, State action is required. There's none. It hasn't been alleged. All that's been alleged is mere tolerance of negligence. And finally, deliberate killing is not alleged. Recklessness, I think they used. Well, recklessness is an irrelevant difference, in my view, Your Honor, from negligence under the law of nations. Because acting under official authority would make no difference whether it was reckless or negligent. It would have to be intentional for it to be an extrajudicial killing. One can't negligently send a death squad to someone's house. One can't negligently send a cluster bomb down on a village that you're trying to move to run a pipeline through. I mean, I suppose one could, but it wouldn't be actionable. It would just be horrific. And so there has been absolutely no allegation of the requisite deliberate killing to state a claim for extrajudicial killing or, as they say, tantamount to extrajudicial killing. I'm not even sure what that means. It's a legal matter. And the Abagninian case, if I'm pronouncing that correctly, the most recent case to talk about that makes it pretty plain that the specific intent is required for an ATS claim, and there is none alleged here. And none could be alleged here based on the facts as found by the district court, an accident. Okay. Well, you brought up the CAFA pleading. Can I just ask you a question about diversity? Minimal diversity jurisdiction under the Class Action Fairness Act, if the plaintiffs had actually put in the complaint the elements of CAFA, that is, the over 100 people and the $5 million, which essentially what they're arguing the Court should have concluded, but if they had actually put that in the complaint, don't they have jurisdiction? Well, Your Honor, I would cite the legal principle of close only counting in horseshoes and hand grenades. That is to say, they did not. They are required to. And frankly, Your Honor, I'm not sure they could, because remember, this is a so-called foreign cubed case, Mexican plaintiff, Mexican defendant, Mexican cited tort. So Mexican law would surely have to be approved as a fact with respect to the damages to get to the $5 million. But this is at the complaint stage. If they had said over 100 people, and if they had said in excess of $5 million, that's what your argument was in regard to the adequacy of the pleading. That's what you were saying. If they had done that, we wouldn't be here, because, of course, they would have diversity, minimal diversity jurisdiction. So then the question is whether there was any effort or any discussion, certainly it's not in the district court opinion, about a request to amend the pleading as an alternative to the radical result of dismissal, amend the pleading by allowing them to re-plead to satisfy the elements of CAFA. Well, Your Honor, there was no such discussion. Recall that I moved to dismiss the original complaint. And while that motion was pending, they filed an amended complaint. And that is the complaint that Judge Silver dismissed. Only in response to the second motion to dismiss was the theoretical notion of CAFA minimal diversity jurisdiction raised. And as we heard earlier, the Court has asked to infer that, you know, 65 minors must have 100 decedents. Well, I don't know if that's the case. They may all be childless and it all may as sheet or, you know, whatever. But that's neither here nor there. The fact of the matter is what the Supreme Court has said about that is the plaintiffs get no benefit of inference in pleading in the Bender case.  And I've been in that case situation many times myself. And because it's not alleged in the complaint, the plaintiff says, well, you can't remove. There's no other. It doesn't show you can. Well, the Supreme Court says, yes, if you're defendant, you can get some inferences, but not if you're a plaintiff. Now, if I may, I'd just like to turn to you. Kennedy. Of course, Your Honor. Kennedy. I'm following up on Judge Sessions' question. Even if the class allegations were made for purposes of CAFA, what would be the substantive law which each of the class members claimed was violated and approximately caused their damages? Well, Your Honor, I don't think it would be the Alien Tort Statute. Well, could it be but the Alien Tort Statute? Could be the wrongful death claim, the loss of consortium claim, the intentional interference with something that they charge us with on the theory that they are now in the United States district court, and that is the claims they wish to make. And as a choice of law, we should choose the law of the United States? Surely we would not, but that's what their pleading before this Court suggests. Their pleading suggests that the common law of the common law of Arizona is invoked by the Class Action Fairness Act. Well, it doesn't suggest anything about the Class Action Fairness Act, of course, but there are State law claims. But what I'm thinking is that the class act, the violations of law on page 12 of the   And I think it's important that we talk about the statutes and common law of the State of California, including but not – pardon me, State of Arizona, including but limited to the wrongful death negligence. So therefore, there's a substantive cause of action for the Class Action Fairness Act. Right? And it's the State law of Arizona. It is so – Not the Alien Tort Claims Act. It is so alleged, Your Honor. Thank you. Now, if I may just return briefly to the second aspect of the Alien Tort Statute that has been urged this morning. Indeed, it was urged first by my adversary, the right to safe work, that somehow my clients have violated the law of nations as found in the right to safe work. And I have only three points here. One, it's not specific or definite enough. Two, it's not universally accepted. And three, prudential concerns militate against this right being added to the – those actions that can be heard on VATS. And I think the Court has touched on all of those in prior remarks, so I'll be very brief. The language specific universal and obligatory that is found in the Sosa case actually comes from this Court's decision in the Marcos case and adopted effectively by the United States Supreme Court in the Sosa case where it was found that there is no sufficiently specific universal or obligatory customary international brief illegal detention. The opposite was found, of course, in the Marcos case with respect to torture. I think there's no question but that it would be very difficult to articulate the specific universal and obligatory nature of that right to safe work. Nor is that same asserted right universally accepted as the Court, I think, brought out very plainly in speaking with Ms. Fisher about the various declarations and international agreements and conventions that she has cited. They are mostly hortatory in nature. In the Flores case, the Second Circuit said, quote, international conventions express virtuous goals, understandably expressed at a level of abstraction needed to secure the adherence of states that disagree on many of the particulars regarding how actually to achieve them. And I think that fairly describes that which has been proffered here as a law of nation and is not. And finally, I think Judge Silver and, again, Judge Babb put it quite well, that prudential concerns heavily militate against this. U.S. courts would become the arbiter of all workplace claims in the world, and that should not happen under the teaching of the Supreme Court in the Sosa case. So I want to go back just very briefly on the capital point, if I may, which is this. I believe that argument has been waived. It was never raised. And so that if we were to ---- Actually, under the statute, actually. This Court has the power to, if it so chooses, say the case should be remanded. There should be an opportunity on the part of the plaintiff to amend so that this issue can be resolved by the district court. And then, you know, assuming that that meets the pleading requirements, you could file a motion to dismiss regarding whether, in fact, they could prove, I guess this would be, or by summary judgment, I suppose, whether they could prove the 100 people and the $5 million. But we have the power to do that at the court of appeals level. I won't argue that, Your Honor. But I do think that would not say ---- It's probably not a smart thing to say that the court of appeals still can't do anything. Just as a matter of principle. Very well, Your Honor. Well, Your Honor, let me, if I may, read one sentence. Do you have a question, Your Honor? I'm sorry. This sentence reads as follows. Our unelected judiciary should not assume the role of a roving sheriff in recurring internecine disputes involving claims of inequity and oppression outside the United States. Those words, of course, are not mine. They are Judge Bea's in his concurring opinion in the 2008 Rio Tinto decision by this Court. I ask the Court to decline to take that sheriff's role here, and I thank the Court for its time today. Thank you very much. Ms. Fisher, we'll allow you two minutes for rebuttal. I just wanted to make a few additional points. First, just on the State action point, we were talking about State action and whether or not courts still require it. But I also wanted to point out that there was State action present here, as the discussion with opposing counsel indicated. And that State action was alleged in the facts of the complaint that the Mexican government did come in and do an abbreviated, very short three-hour inspection of this mine, left abruptly, but did find that there were many, many deficiencies, several of which needed to be remedied immediately because they were life-threatening. And that inspection was 18 months prior to the mine explosion. So to say that those needed to be remedied immediately and then 18 months go by and the mine explodes. And the State action part here is that the Mexican government abruptly ended the inspection and never followed up with the defendants to see if they had made any of those changes that, as it found, were life-threatening. In addition, just to note, this mine was operating on a concession from the Mexican government, which we also believe constitutes State action. And then just on the extrajudicial killing point, courts have found, specifically the Central District of California in the Mujica case and then the Eleventh Circuit in the Chiquita case, that specific intent in those cases, in the Mujica case, for example, what had happened was Occidental Petroleum paid security forces to protect a pipeline, and then the security forces dropped bombs on a village around that pipeline, not intending to kill the 17 civilian plaintiffs in that case, but intending to kill armed insurgents. But because of the reckless nature of dropping bombs on a village, which leads to civilian deaths, that rose to the level of deliberate killing. And similarly, in the Chiquita case, the AUC or the Colombian paramilitaries were hired to protect a banana plantation from left-wing guerrilla insurgents and then ended up brutally murdering the civilian plaintiffs. Again, Chiquita, the defendant in that case, did not intend for civilian plaintiffs to be killed. And so, again, hiring the AUC, which is a known violent paramilitary organization, was reckless conduct, which rose to the level of deliberate killing. Thank you very much. Court thanks counsel for their argument. And the case of Gonzalez-Diaz v. Grupo Mexico will be submitted.
judges: Sessions, Bea, Watford